UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID A. AND CHERYL R. JACQUES,
    Plaintiffs/Counter-Defendants,

v.                                       Case No. 2:14-cv-00077
                                           HON. R. ALLAN EDGAR

JPMORGAN CHASE BANK, N.A.,
    Defendant/Counter-Plaintiff.
_____/

## MEMORANDUM OPINION

Defendant JPMorgan Chase Bank, N.A. ("Chase"), asks for judgment on the pleadings for Plaintiffs' Complaint and Chase's Counterclaim. (Docket #54)  In addition, Chase requests that this Court: (1) enter a litigation injunction enjoining Plaintiffs from filing new lawsuits; (2) declaratory judgment that Chase is not the Plaintiffs' loan servicer; and (3) an award of $13,175.80 for Chase's attorney fees against Plaintiff for their bad faith, oppressive, and frivolous litigation tactics and pleadings.

### I. Facts

On January 12, 2004, Flagstar Bank originated a $99,000 loan for the Plaintiffs that was secured by a mortgage of Plaintiffs' home. (Doc. # 57, Dft's Exh. A)  At that time, Statewide Financial Group, Inc. ("Statewide Financial") was the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") was mortgagee (as nominee for Statewide Financial), while Chase was loan servicer.

On August 24, 2005, Plaintiffs took out a second mortgage on their property for $26,000 and a second loan to pay off the first loan. (Doc. #57, Dft's Exhs. F, G).  Homefield Financial, Inc. ("Homefield") was the morgagee/lender and Option One Mortgage Corporation ("Option One") was loan servicer. (Doc. #57, Dft's Exh. H).  On September 26, 2005, MERS, as nominee for Statewide Financial, recorded a Satisfaction/Discharge of the first mortgage in the Delta County Register of Deeds. (Doc. #57, Dft's Exh. C).  At this point Chase was no longer servicer of the first loan.

On November 19, 2007, Option One sent a letter to Plaintiffs that misinformed them that the servicing of their second loan would be transferred to Chase. (Doc. #57, Dft's Exh. H). Chase states that this letter was sent by Option One in error and that no transfer occurred. (Doc.

#57 at 5–6).  Option One sent another letter to Plaintiffs on January 16, 2008, that informed Plaintiffs that their loan was submitted for foreclosure and to contact Option One with any questions.  (Doc. #57, Dft's Exh. H).

On April 9, 2008, Plaintiffs filed for Chapter 7 Bankruptcy protection.  In the public filings Option One is listed as holder of a secured claim on Plaintiffs' property/mortgage. (Doc. #57, Dft's Exh. H; *See e.g.*, Exh. K: Schedule D – Creditors Holding Secured Claims; Schedule H – Codebtors; Statement of Financial Affairs at 3; Chapter 7 Individual Debtor's Statement of Intention; and Verification of Creditor Matrix).  Chase is not listed in these bankruptcy documents as a creditor.

On April 17, 2008, Plaintiffs' lender, Homefield, publicly filed a Motion for Relief From the Automatic Stay in the Plaintiffs' bankruptcy regarding its first and second mortgages on the property: "Option One Mortgage Corporation is servicing agent for [Homefield]" and "no other parties have an interest in the [property]." (Doc. #57, Dft's Exh. H.)  On April 28, 2008, Plaintiffs' bankruptcy attorney received a letter from Option One regarding workout options for Plaintiffs.  (Doc. #57, Dft's Exh. M.)  By Assignment of Mortgage recorded in the Delta County Register of Deeds on July 27, 2009, the lender of the Second Mortgage, Homefield, assigned the Second Mortgage to Option One. (Doc. #57, Dft's Exh. N.)

Between 2012 and 2014, Plaintiffs sent multiple qualified written requests ("QWRs") pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA"), to Chase.  QWRs are sent to the current mortgage loan servicer and seek certain information relating to the servicing of that loan.  12 U.S.C. §§ 2605(e), (i).

On December 6, 2013, Plaintiffs filed a claim in the Michigan Delta County Small Claims Division of the District Court based on Chase's alleged failure to respond to a QWR sent in the fall of 2012 (Case no. 13-SC-1016).  According to Chase, the notice of the claim was sent to the wrong P.O. Box in Ohio, needed processing, and because the loan at issue was no longer serviced, took much longer to locate the account and related documents.  Chase claims the time to locate this account resulted in their failure to appear for a hearing scheduled on January 28, 2014, and entry of default judgment against Chase.  Chase represents that this claim was without merit but paid the $5,000 judgment to resolve the matter.

In response to a QWR dated December 4, 2013, Chase sent the Plaintiffs a letter on January 27, 2014, including details of the loan, stating "[y]our loan was paid in full as of August

2

31, 2005, with Chase." (Doc. #55, Dft's Exh. O at 3.) Chase enclosed with the letter all information it had regarding Plaintiffs' dormant loan, which included Plaintiffs' payment history showing a final entry of an escrow refund as of September 2005.

However, on February 11, 2014, Plaintiffs filed another claim in the Delta County Small Claims Division of the District Court based on a QWR Plaintiffs sent June 1, 2013. (Case no. 14-SC-132.) That case is currently pending.

On March 5, 2014, Plaintiffs filed another claim in the Delta County Small Claims Division of the District Court based on a different QWR sent June 13, 2013. (Case no. 14-SC-196.) Chase states, and Plaintiffs do not argue otherwise, that all three QWRs that are the basis for these cases are related to the same loan.

## II. Discussion

Although Chase asks this Court for multiple specific requests, they can be narrowed down to three: (1) judgment on the pleadings and counterclaim and declaratory relief; (2) a litigation injunction; and (3) attorney fees for Plaintiffs' bad faith conduct.

### A. Judgment on the Pleadings & Declaratory Relief

Motions for judgment on the pleadings are analyzed under the same standards that govern motions to dismiss for failure to state a claim. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973). But legal conclusions or unwarranted inferences are not accepted as true. *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999). The difference between a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings is that on a judgment on the pleadings the court reviews not only the complaint, but "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Motions for judgment on the pleadings are granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

Plaintiffs claim that Chase violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to respond to Plaintiffs' QWR. Plaintiffs argue that

they sent Chase a QWR and Chase failed to timely acknowledge receipt of the request or respond appropriately. RESPA requires that a servicer acknowledge a QWR within five days and provide a substantive response within thirty days by: (1) making corrections to the borrower's account; or (2) providing the information requested; a written response with the reasons that the servicer believes that the account is correct; or an explanation for why the information is unavailable or cannot be obtained and providing contact information for further assistance.  12 U.S.C. §§ 2605(e)(1), (2).

Under RESPA, acknowledgment and a substantive response are only required when sent to the "servicer."  The term servicer means "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).   And, "servicing" means

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts in escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3).  At the time the Plaintiffs filed the QWRs Chase was not a loan servicer on the first or second loans.  This is supported by the plethora of exhibits attached to pleadings and public records. Although Plaintiffs failed to properly send the QWR to the correct Chase location, which can be grounds for refusal to respond, Chase responded to Plaintiffs' request by letter on January 27, 2014. The letter stated that the "loan was paid in full as of August 31, 2005," and enclosed with the letter all information it had regarding Plaintiffs' dormant loan, which included Plaintiffs' payment history showing a final entry of an escrow refund as of September 2005.  (Doc. #55, Dft's Exh. O at 3.)

With respect to the loan serviced by Chase from January 2004 to September 2005, even if Chase had an obligation to respond to the QWR over eight years after it ceased serving their loan, it responded with the substantive information regarding the issues raised in the QWR. Based on the substantial information in the public records and pleadings, it is clear that Chase did not service the second loan.  In response, Plaintiffs have even included a copy of David Jacques's consumer credit report that lists only the first loan/mortgage with respect to Chase. (Docket #57, Ex. A at 3).  The dates listed in the credit report correspond to the dates given by Chase.  Although Plaintiffs argue that a letter from Option One served to transfer service to

4

Chase, it is clear that Plaintiffs had been on notice that that letter was sent in error or otherwise incorrect.  Again, this is based on significant information attached to the pleadings and in the Plaintiffs' bankruptcy and credit records.

In response Plaintiffs have not alleged or asserted anything to counter Chase's motion. Their own exhibits demonstrate that they have improperly filed an action against Chase.  It seems that the Plaintiffs are upset that their home was foreclosed; however, this unfortunate fact does not obviate the need for Plaintiffs to properly pursue actions.  With regard to the first home loan, Chase was likely not required to even respond, but did and fulfilled its obligation to respond to the QWR because it did service that loan prior to 2005.  The second loan required no response because no documentation suggests that Chase was the servicer of that loan; in fact, all the records show that Chase was not the servicer.  In addition to the fact that Chase was not the servicer of the second loan, Plaintiffs failed to explain how their account was in error with regard to Chase, failed to properly send the QWR to Chase, and include actual damages in the QWR and complaint as required under RESPA.  However, addressing these issues is not necessary.

**B. Litigation Injunction**

Chase seeks a litigation injunction preventing the Plaintiffs from filing additional lawsuits related to these issues.  It is well established that a court has the power, under the All Writs Act, 28 U.S.C. § 1651, to enjoin the filing of repetitive litigation of the same issue and harassing lawsuits.  *State of Mich. v. City of Allen Park*, 573 F. Supp. 1481, 1487 (E.D. Mich. 1983).  Although the normal procedural method for dealing with litigation of the same issue is through a motion of the res judicata effect of a prior judgment, certain situations, such as protection of defendants from unwarranted harassment, waste of resources, and "concern for maintaining order in the court's dockets," may require the issue of an injunction.  *Id.* at 1487 (quoting *In Re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)).

The Sixth Circuit has provided several factors that district courts should consider when deciding whether to enjoin a litigant's future access to the courts:

> 1. The litigant's history of litigation and in particular whether it entails vexatious, harassing, or duplicative lawsuits;
> 2. The litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?
> 3. Whether the litigant is represented by counsel.
> 4. Whether the litigant caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

5

      5. Whether other sanctions would be adequate to protect the courts and the other parties.

*Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 942 n. 18 (6th Cir. 2002). In making its decision the court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

      The Court has reviewed these factors and the facts in this case and concludes that a litigation injunction should issue. Plaintiffs filed multiple claims against Chase without merit and are, as demonstrated by their multiple actions based on each QWRs, likely to continue this practice. The Plaintiffs, by their own pleadings and publicly filed bankruptcy documents, were on notice that Chase no longer serviced the loans at issue when they were foreclosed upon. The litigants are not officially represented by counsel, but do state that they have "consulted" an attorney. The resources of both federal and state courts and Chase have been wasted on these meritless claims. As explained below, other sanctions are appropriate. Given the lengthy pattern of abusing the state and federal legal system, this Court is convinced that further abuse will occur without an injunction. Thus, this Court will enjoin Plaintiffs from filing further cases against Chase based on these two home loans.

## C. Award of Attorney Fees

      Chase requests an award of attorney fees and costs in having to deal with these actions. As part of its inherent power, a district court has the power to impose sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50 (1991); *Jones v. Continental Corp.*, 789 F.2d 1225, 1228–29 (6th Cir. 1986). However, to impose sanctions a finding of bad faith is required, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002), or conduct "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

      Plaintiffs knew that Chase was no longer its servicer prior to the QWRs. Plaintiffs also received a substantive response from Chase detailing their payment history and closure of the loan because it was paid in full. Even then, Plaintiffs filed multiple meritless state court claims against Chase based on each QWR they sent. This Court has already explained the need to enjoin Plaintiffs from filing further claims against Chase and for similar reasons this court finds that Plaintiffs have acted in bad faith. In addition to the frivolous claims, Plaintiffs have been given multiple opportunities to take a settlement and end these cases. This Court explained to

Plaintiffs their options with regard to settlement and potential for an award of Chase's attorney fees as a result of their actions. This Court holds that the Plaintiffs acted in bad faith.

At the outset this Court notes that had Chase failed in its obligation under RESPA, and the Plaintiffs were successful in litigation against Chase, they would be entitled to reasonable attorney fees.  12 U.S.C. § 2605(f)(3).  Chase has requested attorney fees of $13,175.80 for 58.3 hours of work by their counsel, Mark Magyar, at a rate of $226 per hour.[1]  The Plaintiffs have not challenged the calculation of this figure, the hourly rate, or that the hours worked are unreasonable.  According to Mr. Magyar's affidavit, the fee request is taken from his attorney fee billing summary, which show hourly rates of $226 per hour billed to Chase.

In the absence of an objection to the rates, and given that Chase accepted these market rates, the Court holds that the hourly rates billed are reasonable within the community for attorneys of comparable skill and expertise.  *See Degussa Admixtures, Inc. v. Burnett*, No. 1:05-CV-705, 2007 WL 1041188, at *2 (W.D. Mich. Apr. 4, 2007) *aff'd,* 277 F. App'x 530 (6th Cir. 2008); State Bar of Michigan, *Economics of Law Practice in Michigan, 2014 Attorney Income and Billing Rate Summary Report* (2014) *available at* https://www.michbar.org/pmrc/articles/0000151.pdf.  Therefore, Chase is entitled to $13,175.80 in attorney fees from Plaintiffs for their bad faith, oppressive, and frivolous litigation tactics, and pleadings.

### III. Conclusion

A judgment consistent with this memorandum opinion will be entered.

**IT IS SO ORDERED.**

Dated:        1/5/2015                                */s/ R. Allan Edgar*
                                                     R. Allan Edgar
                                                     United States District Judge

---

[1] Chase requests attorney's fees for the work conducted in this federal case.  Fees are not requested for the multiple state court cases because Chase will seek fees for those cases in the state court.